### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | : Chapter 7 |
| RAYMOND CHARLES MOHR, | : Bankruptcy No. 02-10551DWS |
| Debtor. | : |
| | |
| GARY F. SEITZ, Chapter 7 Trustee, | : Adversary No. 04–0043 |
| Plaintiff, | : |
| v. | : |
| JOSEPH DIPINTO, JR., WALTER MEHL, PAULINE MEHL, DIPINTO-MEHL FUNERAL HOME, THE ESTATE OF MARIE FEGLEY, Deceased, THE ESTATE OF JOHN JAMES RAGO, | : |
| Defendants. | : |

## MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of Joseph DiPinto, Jr. ("DiPinto") to Set Aside Default Judgment (the "Motion") in connection with the Complaint filed by Gary Seitz, the Chapter 7 trustee of the estate of Raymond C. Mohr (the "Trustee"), against DiPinto, Walter Mehl ("W. Mehl"), Pauline Mehl, DiPinto-Mehl Funeral Home (the "Home"), the Estate of

Marie Fegley and the Estate of John James Rago (together the "Defendants"). For the reasons that follow, the Motion is granted on the terms and conditions set forth below.

**BACKGROUND**

The following facts are of record.[1] On January 6, 2004 the Trustee filed a complaint against the Defendants for recovery of transfers pursuant to bankruptcy and state fraudulent conveyance and preference laws (the "Complaint"). The Complaint was one of numerous actions the Trustee commenced to recover transfers made by Raymond C. Mohr ("Debtor") in connection with a "Ponzi" scheme whereby Debtor had convinced investors to provide funds with the promise of high returns on their capital. However, the funds were not invested but rather were used by him, and as new investments were made, they were utilized to make

---

[1] In his memorandum, the Trustee recites certain facts which are not part of the record of this contested matter. As the Trustee did not testify, the only facts before me are found from the testimony of DiPinto and documents as to which I may take judicial notice.

I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

payments to the earlier investors to legitimatize the scheme. While the earlier investors were paid, the later ones experienced losses. According to the Trustee, of the 91 investors, 49 were "net gainers in that they received a return of their investment plus a profit, including the Defendants herein. DiPinto acknowledges an investment of $19,000 and the receipt of a substantial return which the Trustee quantified at $192,000. The Trustee undertook a program to equalize the return among the entire group of investors, utilizing the fraudulent conveyance and preference law as his theory of recovery.[2]

In December 2003 the Trustee's counsel sent DiPinto a certified letter which DiPinto signed as received but did not open. The Trustee contends this letter was one of many demand letters he sent preliminary to filing the above described lawsuits. DiPinto explains that he had received many letters in connection with the Mohr bankruptcy case and that after the first few months, he stopped opening them and discarded them because he did not think they pertained to him. Moreover, such correspondence purportedly reminded him of the Mohr "Ponzi" scheme which he found upsetting since he had discovered that his positive "investment" experience had been used to lure other investors who lost money.

---

[2] In Counts I and II, the Trustee, using his strong arm powers under § 544(b), demands judgment for $314,981.00 against the Defendants pursuant to Pennsylvania law governing actual and constructive fraudulent conveyances. Count III demands judgment for $59,613 against Defendants pursuant to federal bankruptcy law governing fraudulent transfers. The bankruptcy statute has a one year reach back which presumably accounts for the difference in the amount of the demands made. Compare 11 U.S.C. § 548(a)(1) with 12 Pa.C.S.A. § 5109. Finally Count IV demands judgment for $27,716.00 against Defendants pursuant to § 547 governing preferential transfers. Again the shorter reach back period of 90 days presumably accounts for the lesser number. The Complaint does not itemize the individual transfers which, as noted below, opens the door to DiPinto's Motion.

Finally DiPinto advises that he has been treated for depression since 1995, culminating in a mental breakdown in 2003. He is currently under the care of a family practitioner for depression and receiving medication. He also claims his lack of responsiveness to the lawsuit was attributable to the death of his father in December 2003.

On January 23, 2004 DiPinto was served with the summons issued in connection with the Complaint. When no answer was filed, the Trustee requested entry of default on April 5, 2004, and that relief was granted on April 8, 2004. On May 6, 2004 the court *sua sponte* entered an order directing the plaintiff to take action under Fed.R.Civ.P. 7055 or the adversary case would be dismissed for lack of prosecution. On July 7, 2004, the Trustee filed a motion for default judgment against DiPinto, W. Mehl and the Home which was scheduled for hearing on July 27, 2004 on notice to DiPinto who neither answered nor appeared. Judgment in the amount of $314,981.00 was entered against the three defendants named in the motion. Based on post-filing discovery, the Trustee concluded that the other three defendants were not culpable.[3] DiPinto claimed to be unaware of the Complaint, the motion, the hearing, and the judgment because he had not opened any of the mail he received from either the bankruptcy court or the Trustee's counsel.

In December 2004 his bank began dishonoring his checks. Upon inquiry, he learned that the Trustee had attached his account to satisfy the judgment. He took no action for

---

[3] According to the Trustee's brief, they were customers of the Home who had deposited "pre-need" funds with the other defendants. Whether these funds are included in the $314,000 judgment obtained is unknown and is the precise issue raised by DiPinto to support the Motion.

awhile and then called the Trustee's counsel for advice. He understandably declined to give any. Finally on January 21, 2005 his newly retained counsel filed a motion to set aside the judgment relying on DiPinto's contention that he had never been served with the Complaint. However, he was compelled to withdraw it when a search of the record confirmed that service had been made. A second, and the present, motion to set aside judgment was filed on February 9, 2005. After an evidentiary hearing on April 11, 2005, I allowed a generous amount of time for the filing of briefs as requested by DiPinto's counsel on the representation that he would engage in good faith negotiations with the Trustee's counsel.[4] This is the last adversary proceeding pending in this bankruptcy case filed in 2002, and the only impediment to completing the administration of the estate and making distribution to creditors injured by the Ponzi scheme.

**DISCUSSION**

A motion to set aside a default judgment is committed to the discretion of the trial judge.[5] Hritz v. Woma Corp., 732 F. 2d 1178, 1181 (3d Cir. 1984). In exercising that discretion, the court must consider three factors: (1) whether the defendant has a meritorious defense; (2) whether the plaintiff will be prejudiced if the default is lifted; and (3) whether

---

[4] The judgment also got the attention of W. Mehl who made a settlement with the Trustee who then agreed to open the judgment.

[5] DiPinto relies on Fed.R.Civ.P. 60(b) which provides that "on motion and upon such terms as are just, the court may relieve a party ... from a final judgment... for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect." A motion under Rule 60(b)(1) must be made within one year of entry of the judgment.

the default was the result of the defendant's culpable conduct. Id. Given the preference that cases be disposed of on the merits whenever practicable, close cases should be resolved in favor of opening the default judgment. Feliciano v. Reliant Tooling Company Ltd., 691 F.2d 653, 656 (3d Cir. 1982).

*Meritorious defense*

A meritorious defense is presumptively established when the "allegations of the defendant's answer, if established on trial would constitute a complete defense to the action." Hritz, 732 F.2d at 1181 (*quoting* Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)). As DiPinto did not file an answer, I must refer to the Motion to evaluate the defense he lodges to the Complaint.

First, DiPinto states that the judgment amount is incorrect because the Complaint does not identify the transfers made to each of the six defendants and when they were made. With this information, he claims he would be able to determine if any of the payments were outside the statute of limitations or made to other of the defendants. Notably DiPinto does not aver that any of the payments he received from Debtor were not fraudulent transfers or preferences but only that he is not liable for all the transfers notwithstanding Plaintiff's averment that all the Defendants were acting in concert, and as such are jointly and severally liable for all the recoveries sought in the Complaint.

I agree with DiPinto that there is nothing in this Complaint as pled that would support recovery of $314,981.00 from DiPinto. He testified that he received $192,000 on an investment of $19,000. That testimony, if presented at the trial of this action, would be a

-6-

complete defense to the demand for the larger sum absent some other facts proven by the Trustee which would support his joint and several liability theory. The Trustee has aggregated a series of transfers, failing to identify them as to amount and payee, and then taken judgment only against DiPinto, W. Mehl and the Home. His counsel explained that the decision not to proceed against the other defendants arose from further discovery that absolved them from liability. However, it is not clear whether transfers to them were still counted against DiPinto. Nor are there any facts pled that support joint and several liability.

In short, I believe that DiPinto may have a defense to the amount of damages awarded to the extent that transfers were not received by him or on his behalf. On the other hand, there is no defense to liability asserted, meritorious or otherwise. Indeed DiPinto appears to acknowledge his responsibility. This prong of the test requires a complete defense which DiPinto has failed to assert.

*Prejudice to Plaintiff*

The Trustee contends that setting aside the judgment would prejudice the creditors of the estate that he is administering and on whose behalf he has sought to recover the payments made to the "net gainers." First, he notes that the bankruptcy case is fully administered but for this matter which holds up the distribution to creditors, all victims of the Ponzi scheme. Second, he states that he has relied on the judgment in taking numerous steps to execute thereon, spending estate funds to do so. Finally, he observes that DiPinto seeks to open the judgment to raise a statute of limitations defense sixteen months after the filing of the Complaint and after the Trustee spent considerable time and money in prosecuting the action.

Mere delay in satisfying a claim rarely establishes the degree of prejudice necessary to prevent the opening of a judgment entered at an early stage of the litigation. Feliciano, 691 F.2d at 656. As the Trustee recognizes in his memorandum, "prejudice arises when plaintiff's claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default or other substantial factors." Trustee's Brief in Opposition to Motion at 8 *(quoting* Dizzley v. Friends Rehab. Program, 202 F.R.D. 146,147-48 (E.D. Pa. 2000)).

The Trustee has not asserted that his ability to pursue the claim has been hindered since the entry of judgment nor that there has been a loss of available evidence or increased potential for fraud. He has asserted and the Motion confirms that DiPinto seeks to raise a statute of limitations defense which could be prejudicial although he does not state in what way. The Trustee has contended that his reliance on the judgment was responsible for actions that were costly to the estate. However, as he has presented no evidence of these costs, I cannot ascertain whether they are sufficient to find prejudice.

The absence of evidence on this latter point is not significant because it is apparent that the Trustee's efforts have been in aid of execution, the result of which has been his discovery that DiPinto has but one asset, his home which has available equity to satisfy a judgment in whole or in part. This discovery has been useful since it is the foundation for understanding DiPinto's position. It is DiPinto's resistance to the loss of his home, which also houses the Home which is his business, that compels him to continue this litigation with the Trustee as opposed to reaching a settlement as the other "net gainers" have done. DiPinto's testimony of his anguish that he was used by Debtor as a "dupe" to seduce other

-8-

investors who lost substantial sums of money is qualified by his self interest in not wanting to disgorge his unlawful profits. Since DiPinto will ultimately be liable for the return of his "windfall," the discovery in aid of execution will not have wasted time or money.

While delay in and of itself is not generally a reason to refuse to set aside a judgment, it may be found to be so where the court finds that the setting aside of the judgment is for the sole purpose of delay. DiPinto does not contest liability but rather amount. The Trustee has given DiPinto's counsel the itemization of transfers that DiPinto correctly claimed was absent in the Complaint. Presumably on that basis a settlement could have been reached at a number that represented what DiPinto thought had been the transfers he received, and at the request of DiPinto's attorney, I allowed the parties time to accomplish that. However, rather than a resolution being reported, I received briefs. DiPinto's counsel candidly acknowledged that the Trustee's insistence on looking to the value of the real estate was the impediment to settlement. He contends that DiPinto does not have funds to pay and does not want to lose his house. Meanwhile the other beneficiaries have paid into the pot and creditors who were victimized await a recovery of some part of their investment from a bankruptcy liquidation that began in January 2002.

*Culpable conduct*

DiPinto's explanation for not responding to the certified demand letter and the Complaint served upon him is that he simply ceased opening his mail. The explanations he offers for failing to do so are not credible. He states that he did not think these communications had anything to do with him, but were merely relating to the bankruptcy case generally. However, the service of a complaint and a certified demand letter are

unlikely to be confused with routine notices from the bankruptcy court, especially since they were sent by the Trustee's counsel. He also states that he did not open the bankruptcy communications because they reminded him of the Ponzi scheme and how he had been used as a "dupe" to the detriment of many people. Since he was not opening any mail other than communications from a lawyer who was sending him funeral business, his feelings about the Ponzi scheme seem irrelevant to his decision not to open his mail. I am also not persuaded that the death of DiPinto's father the month <u>before</u> the Complaint was filed can provide an excuse for not answering the Complaint and the motion for default judgment. Finally DiPinto's testimony of depression, which presumably could have a paralyzing effect, does not have appeared to have disabled him from opening the mail that could benefit him and did not disable him from securing counsel and fighting the judgment at this time notwithstanding the continuation of his condition to this date. Absent medical evidence or other corroboration of diminished capacity, I cannot conclude that DiPinto's chronic condition justifies his conduct.

In <u>Hritz v. Woma,</u> <u>supra</u>, the Third Circuit found that "reckless disregard for repeated communications from plaintiffs and the court, combined with failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." 732 F.2d at 1183. Thus, while the culpable conduct standard requires that more than negligence be established, it need not necessarily rise to the level of bad faith. I reject DiPinto's contention that his failure to open the demand letter, answer the Complaint and motion for default judgment, and take no action until after his bank account was attached can be considered excusable neglect. His actions in deliberately ignoring repeated communications by not opening the mail were

-10-

reckless.[6] He knew that he had received a "windfall" from the Debtor's Ponzi scheme, and he was not justified in ignoring attempts by the Trustee to hold him accountable.

*Effectiveness of Alternative Sanctions*

Rule 60(b) provides that the court may relieve a party of a judgment on "such terms as are just." This language allows courts to impose terms and conditions upon opening a judgment in order to ameliorate the prejudice suffered by the non-defaulting party. Feliciano, 691 F.2d at 657. Trial courts are encouraged to consider whether any sanction short of the default judgment would be ineffective. Hritz, 732 F.2d at 1182. Indeed one panel of the Third Circuit Court of Appeals described the effectiveness of alternative sanctions as a fourth factor to weigh when presented with a motion to set aside a default judgment. Emcasco Insurance Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987) (finding that neglect was not excusable but when evaluated with other relevant factors and the repeated admonition that dismissal should be a last, not first resort, refusal to open judgment was reversed). For the reasons that follow, I believe that I can temper the harshness of a default judgment in an amount which appears to be excessive by opening the judgment on very narrow terms.

I have determined that DiPinto does not have a meritorious defense to liability for the judgment but rather has a partial defense as to damages. In Atlas Communications v. Waddill, 1997 WL 700492, at *4 (E. D. Pa. October 31, 1997), the court recognized the

---

[6] Rooks v. American Brass Co., 263 F.2d 166 (6th Cir. 1959), while cited by DiPinto, bears no resemblance to the facts here. In Rooks, the judgment debtor was hospitalized with meningitis during the relevant period and was unable to handle any business. Service of process made at his residence was intercepted by his wife because of his dangerous condition. She turned the papers over to a third party who was under a mistaken impression as to their significance. Rooks had no way to learn of the suit; DiPinto just had to open his mail.

-11-

reluctance of courts in this circuit to deny a motion to set aside a default solely on the grounds that no meritorious defense exists. Rather the court set up a procedure whereby the default would stand but no default judgment would be entered until an evidentiary hearing was held to establish the amount of the judgment. Such a procedure seems appropriate in this case as well.

I have also determined that the prejudice that the Trustee has identified is DiPinto's use of this litigation to obstruct a resolution of his obligation to the estate and the concomitant injury to creditors whose recoveries have been held hostage to this litigation. Moreover additional prejudice could accrue if DiPinto is at this late date allowed to plead a statute of limitations defense. The latter prejudice can be prevented by conditioning the opening of the judgment on DiPinto's waiver of the statute of limitations defense. Id. at 1182 n.3. The former can be addressed by conditioning the opened judgment on a trial of the issue of damages only and setting procedures by which the claim will be liquidated quickly. Given DiPinto's culpability, this approach strikes a more than fair and equitable accommodation between the parties.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

                                        DIANE WEISS SIGMUND
                                        Chief U.S. Bankruptcy Judge

Dated: June 6, 2005

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| RAYMOND CHARLES MOHR, | : | Bankruptcy No. 02-10551DWS |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| GARY F. SEITZ, Chapter 7 Trustee, | : | Adversary No. 04–0043 |
| Plaintiff, | : | |
| v. | : | |
| JOSEPH DIPINTO, JR., | : | |
| WALTER MEHL, PAULINE MEHL, | : | |
| DIPINTO-MEHL FUNERAL HOME, | : | |
| THE ESTATE OF MARIE FEGLEY, Deceased, | : | |
| THE ESTATE OF JOHN JAMES RAGO, | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this 6th day of June 2005, upon consideration of the Motion of Joseph DiPinto, Jr. to Set Aside Default Judgment (the "Motion") in connection with the Complaint filed by Gary Seitz, the Chapter 7 trustee of the estate of Raymond C. Mohr, against, inter alia, Joseph DiPinto, Jr. after notice and hearing, and the memoranda filed by the parties and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED** and the judgment in the amount of $314,981.00 is set aside as to amount **only** on the following terms and conditions:

<u>Adversary No. 04-0043</u>

    1. Liability is established and DiPinto may only contest the amount of the transfers that he has not received. Any statute of limitations defense is waived.

    2. On or before **June 14, 2005** the Trustee will serve DiPinto with requests for admissions which list each of the transfers that are included in the $314,981.00 and ask whether DiPinto admits having received such transfers. DiPinto will provide answers by **June 21, 2005** or the matters will be deemed admitted.

    3. Any motion for summary judgment shall be filed on or before **June 28, 2005** which DiPinto shall answer within 7 days of service thereof.

    4. Trial of this matter shall be held on **July 19, 2005 at 2:00 p.m.** in the Robert N.C. Nix, Sr. Federal Courthouse, 2nd floor, 900 Market Street, Courtroom #3, Philadelphia, PA unless disposed of by summary judgment or settlement.

    5. Plaintiff's counsel shall file the appropriate pleading to dismiss the Complaint as to defendants Pauline Mehl, the Estate of Marie Fegley and the Estate of John James Rago given the acknowledgment that after discovery, the Trustee has concluded that they are not liable to the estate.

                                              DIANE WEISS SIGMUND
                                                Chief U.S. Bankruptcy Judge

Adversary No. 04-0043

Copies to:

Bradley T. Beckman, Esquire
BECKMAN & ASSOCIATES
Two Penn Center Plaza, Suite 910
Philadelphia, PA 19102

Eric L. Frank, Esquire
DIDONATO & WINTERHALTER
1818 Market Street, Suite 3520
Philadelphia, PA 19103

Alan S. Carpel, Esquire
1129 Spruce Street
Philadelphia, PA 19107

John H. Filice, Esquire
RUBIN, GLICKMAN AND STEINBERG
2605 North Broad Street
P.O. Box 1277
Lansdale, PA 19446

Gary Francis Seitz, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

Richard T. Brown, Jr.
Two Penn Center
1528 JFK Blvd., Suite 1204
Philadelphia, PA 19102

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107